1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12

CR LICENSE, LLC,

                    Plaintiff,

          v.

SPA CLUB SEATTLE, LLC, et al.,

                    Defendants.

CASE NO. C04-555JLR

ORDER

13
14

## I.  INTRODUCTION

15
16
17
18
19
20

This matter comes before the court on a motion for summary judgment from Plaintiff CR License, LLC ("CRL") (Dkt. # 53) and a motion for summary judgment from Defendants (Dkt. # 50).  Although CRL has requested oral argument, the court finds both motions appropriate for resolution without oral argument.  For the reasons stated below, the court DENIES both motions.

21

## II.  BACKGROUND

22
23
24
25
26

CRL[1] has owned and operated luxury health resorts under the "Canyon Ranch" name since 1979.  In June 1999, CRL began operating smaller facilities under the "SpaClub" name.  SpaClub facilities generally offer the same services as the Canyon Ranch resorts, including a wide variety of fitness activities, health consultations, various

27
28

_____

[1]Because an understanding of the numerous entities and their predecessors under the CRL corporate umbrella is not essential, the court uses the term "CRL" to refer to all of them.

ORDER – 1

massage therapies, and salon services.  Unlike the Canyon Ranch resorts, however, CRL's SpaClub facilities operate within other hotels and resort entities.  For example, CRL operates SpaClub facilities within the Venetian Hotel in Las Vegas, Nevada, the Gaylord Palms Resort in Kissimmee, Florida, and onboard the Queen Mary 2 luxury cruise liner.  From the record before the court, it appears that CRL rarely uses the SpaClub mark in commerce without the Canyon Ranch mark nearby.

Defendants operate a single salon in Seattle, Washington, under the name "Spa Club Seattle."  In contrast to CRL's luxury operation, Spa Club Seattle is (in Defendants' own words) a "modest" facility.  It offers no fitness activities, employs no health care experts, and "*does not even have a whirl pool* [sic]."  Defs.' Opp'n at 13 (emphasis in original).  Spa Club Seattle does, however, offer massage, skin care treatments, and cosmetic products, as do CRL's SpaClub facilities.

CRL has no SpaClub facilities or other operations in Seattle or in Washington. From the record before the court, the nearest SpaClub facility to Spa Club Seattle is in Las Vegas, more than 800 miles away.  Although CRL claims to have "actively pursued expansion into the Seattle area" (Cohen Decl. ¶ 15), there is no evidence that CRL intends to open a SpaClub facility in Seattle.

There is no dispute that CRL's use of the SpaClub mark preceded Defendants' use of the Spa Club Seattle name.  CRL registered "SpaClub" and "Canyon Ranch SpaClub" as trademarks[2] on the principal registry of the United States Patent and Trademark Office. Each registration declares that the mark's first use in commerce was June 30, 1999 or later.  There is no evidence that Defendants used the Spa Club Seattle name before

---

[2]Technically, CRL registered its marks as service marks.  The court, like the parties, refers to the marks as trademarks.  See Amer. Int'l Group, Inc. v. Amer. Int'l Bank, 926 F.2d 829, 830 n.1 (9th Cir. 1991) ("Service marks are registrable in the same manner and entitled to the same protection under federal law as trademarks.").

ORDER – 2

October 1999.  Tran Dep. at 55.  There is also no evidence that Defendants knew of CRL's use of SpaClub when they named Spa Club Seattle.

CRL brought this action against Defendants, claiming trademark infringement and unfair competition under the Lanham Act, and unfair competition under Washington law. CRL seeks summary judgment on its Lanham Act claims.  Defendants seek summary judgment against all of CRL's claims.

### III.  ANALYSIS

In examining these motions, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena."  Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d 1107, 1109 (9th Cir. 1999).

The parties' motions present two question.  First, can Defendants show that CRL's SpaClub trademark is invalid?  If not, can either party show as a matter of law that the similarity between CRL's SpaClub mark and Defendants' Spa Club Seattle mark is likely (or not likely) to confuse customers about the origin of the parties' goods and services?

ORDER – 3

See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1046-47 (9th Cir. 1998) (discussing elements of trademark infringement).

**A.      Defendants Fail to Prove that CRL's SpaClub Trademark is Invalid.**

Defendants contend that CRL's SpaClub mark is invalid because it is generic, or alternatively, because it is descriptive and has not acquired secondary meaning.  In the hierarchy of trademark protection,"fanciful" marks are strongest, whereas "generic" marks receive no protection.  Id. at 1047.  "Descriptive" marks fall between these extremes.  They receive protection only if they have acquired "secondary meaning."  Id. CRL concedes that its SpaClub mark is descriptive at best, but argues that it is nonetheless valid.

Defendants carry the burden of proving the invalidity of the SpaClub mark. A registered trademark is presumed valid.  15 U.S.C. § 1057(b); Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1254 (9th Cir. 1982) (noting "strong presumption of validity").[3]  Because the SpaClub mark is registered, Defendants must either prove that it is generic or that it has not acquired secondary meaning.  Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc., 198 F.3d 1143, 1151 (9th Cir. 1999) (noting burden of proving "genericness"); Americana Trading, Inc. v. Russ Berrie & Co., 966 F.2d 1284, 1287 (9th Cir. 1992) (noting burden of proving secondary meaning).

Defendants have not met their burden.  In assessing whether a mark is generic, the Ninth Circuit uses the "who-are-you/what-are-you" test.  Filipino Yellow Pages, 198 F.3d at 1147.  A trademark fails the test if its "primary significance" is to "describe the *type of product* rather than [its] *producer.*"  Id. (citation omitted).  A court must take a "holistic approach" in conducting the test.  Id. at 1149.  In particular, although the court should consider the dictionary definition of the words comprising a trademark, it must not adopt

---

[3]As the date of registration for each of the marks-in-suit is in 2001 or later, none of them are "incontestable" under 15 U.S.C. § 1065.

ORDER – 4

1  the overly simplistic view that a generic term plus a generic term equals a generic

2  trademark.  Id. at 1150.  Here, Defendants rely almost exclusively on the dictionary

3  definition of "spa" and "club" to show that CRL's SpaClub mark is generic.[4]  Although

4  the court does not doubt the genericness of the component words, the law requires more

5  evidence to overcome the presumptive validity of CRL's registered marks.  See id. at

6  1151; see also id. at 1050 (noting that "generic individual terms can be combined to form

7  valid composite marks").  Defendants point to several cases where courts found similar

8  composite marks invalid.  E.g., Hunt Masters, Inc. v. Landry's Seafood Rest., Inc., 240

9  F.3d 251, 255 (4th Cir. 2001) (holding that "crab house" is generic); Ale House Mgmt.,

10  Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 141 (4th Cir. 2000) (holding that "ale

11  house" is generic); Surgicenters of Amer., Inc. v. Medical Dental Surgeries Co., 601 F.2d

12  1011, 1020 (9th Cir. 1979) (holding "surgicenter" to be generic).  In each of those cases,

13  however, the defendant relied on more than the dictionary definition of the composite

14  mark's component words.  E.g., Filipino Yellow Pages, 198 F.3d at 1150-51 (noting

15  extensive evidence of invalidity in Surgicenters case).

16

17        CRL offers limited evidence that the Spa Club mark is not generic.  It shows that

18  media reports on its Canyon Ranch facilities often use "SpaClub" as a trademark, rather

19  than as a generic term.  Although this evidence weighs against genericness (see, e.g., Surf

20  Line Hawaii, Ltd. v. Ahakuelo, Civ. No. 88-00090 SPK, 1989 U.S. Dist. LEXIS 11869, at

21  *7-8 (D. Haw. September 22, 1989)), it is also the only evidence on which CRL relies.

22        Considering the presumption that CRL's marks are valid, Defendants' limited

23  evidence to overcome the presumption, and CRL's relatively weak evidence on this issue,

24

25  _____

26        [4]Defendants also argue that CRL's disclaimer of the term "spa club" in its registration for
    the Canyon Ranch SpaClub mark proves that "spa club" is generic.  Defendants ignore 15
27  U.S.C. § 1056(b), which provides that "[n]o disclaimer . . . shall prejudice or affect the
    applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter."
28

ORDER – 5

the court holds that a reasonable jury could conclude that SpaClub is not generic. The court therefore denies summary judgment on this issue.

For similar reasons, the court holds that Defendants have not overcome the presumption that the SpaClub mark has acquired secondary meaning. The court must consider several factors in determining secondary meaning, including whether purchasers of the trademarked goods associate the trademark with the producer, the extent of the trademark holder's efforts to advertise the trademarked product, the length and manner of use of the trademark, and the exclusivity of the use of the trademark. Committee for Idaho's High Desert v. Yost, 92 F.3d 814, 822 (9th Cir. 1996).

Whereas CRL largely ignores these factors,[5] Defendants offer a list of businesses across the nation that use the words "spa" and "club" or the phrase "spa club" in their trade names.[6] Defendants offer no evidence of what services these businesses offer. Nonetheless, the list tends to show that the use of "spa club" is "common and necessary" in commerce, which weighs against the strength of the SpaClub mark. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1143-44 (9th Cir. 2002). CRL mischaracterizes the list as irrelevant evidence that there are others who infringe its trademarks. Pltf.'s Opp'n at 5. Instead, the list is relevant evidence that the SpaClub mark is merely descriptive. See Entrepreneur Media, 279 F.3d at 1143-44.

Defendants have not, however, proven that no reasonable jury could find that the SpaClub mark is valid. Although a jury could conclude that the mark is invalid, the

---

[5]CRL introduces substantial evidence of its efforts to market its SpaClub facilities. It does not, however, address a central difficulty with that evidence. Both in CRL's marketing materials and in media attention paid to its facilities, the SpaClub mark is rarely used without the Canyon Ranch mark nearby. There is little evidence that consumers would associate the SpaClub mark, independent of the Canyon Ranch mark, with CRL's facilities.

[6]CRL argues that Defendants' list is unauthenticated. The court disagrees. Defendants' list consists of trade names, which are self-authenticating under Fed. R. Evid. 902(7).

ORDER – 6

presumption of validity, combined with evidence that could weigh in CRL's favor (e.g., CRL's history of promoting the SpaClub mark) means that a jury could also reach the opposite conclusion.  Summary judgment on the validity issue is not appropriate.

**B.    Neither Party Has Shown As a Matter of Law that Consumers Are or Are Not Likely to Confuse "Seattle Spa Club" with CRL's SpaClub Facilities.**

Assuming that CRL's SpaClub mark is valid, the next inquiry is whether Defendants' use of the Spa Club Seattle name is likely to confuse consumers.  The eight factors first announced in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), guide the court's analysis.  The Sleekcraft factors are:

(1)  the similarity of the marks;

(2)  the marketing channels used to promote the marks;

(3)  the relatedness of the goods or services promoted under the marks;

(4)  the strength of the plaintiff's mark;

(5)  evidence of actual confusion;

(6)  likelihood of expansion of either parties' product lines;

(7)  the degree of care a potential purchaser is likely to exercise; and

(8)  the defendant's intent in selecting the mark.

Id.; GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  The court must not apply the Sleekcraft factors mechanically or by giving equal weight to each factor.  Entrepreneur Media, 279 F.3d at 1141.  As the Entrepreneur Media court put it:

> [A court must] consider what each factor, and – more importantly – what the analysis as a whole, reveals about the ultimate question before [it]:  the likelihood of consumer confusion as to the origin of the product or service bearing the allegedly infringing mark.

Id.  With this guidance in mind, the court turns to an analysis of each Sleekcraft factor.

ORDER – 7

1

**1.     The Similarity of CRL's SpaClub Mark to Defendants' Mark**

The similarity of the marks-in-suit is a nuanced question.  If the only issue before the court was whether the SpaClub mark as used in promoting CRL's facilities is similar to the term "Spa Club" as used in promoting Defendants' salon, this factor would weigh strongly in CRL's favor.  But see Entrepreneur Media, 279 F.3d at 1146 (noting that even minor differences in two marks may have a strong effect on consumers).  This analysis, however, merely addresses the textual similarities between the marks.  The court must also consider the appearance of the two marks as they are used in commerce.  Id. at 1144.  CRL uses a highly stylized "S" with a wavy (and presumably water-evoking) line beneath the remaining letters of SpaClub.  Spa Club Seattle uses a black block with a white "S" superimposed on it, followed by an unadorned "Spa Club Seattle."  These graphical representations are neither so similar nor so different that the court can determine as a matter of law what conclusions a jury would draw.

Moreover, as the court already noted, CRL has made little effort to show that its SpaClub mark has significance independent of the Canyon Ranch mark that accompanies it nearly ubiquitously.  See supra note 5; see also Entrepreneur Media, 279 F.3d at 1144 ("Marks should be considered in their entirety and as they appear in the marketplace . . . .").  A better question, therefore, is whether Spa Club Seattle and Canyon Ranch SpaClub are similar.  The phrases are similar, but the similarity is undoubtedly more attenuated than the similarity between Spa Club and SpaClub.  With these considerations in mind, the court finds that the first Sleekcraft factor weighs only slightly in CRL's favor.

**2.     The Marketing Channels the Parties Use to Promote Their Facilities**

Despite CRL's protestations to the contrary, the parties use only one common marketing channel – the internet.  CRL argues that it promotes its SpaClubs in brochures, flyers, radio advertisements, and other print ads, just as Spa Club Seattle does.  CRL conspicuously fails to address whether it uses any of these marketing channels to target

ORDER – 8

Seattle customers.  CRL's use of flyers and brochures in Las Vegas is hardly the same as Defendants' use of flyers and brochures in Seattle.  Radio advertisements to Floridians do not compete with radio advertisements to Seattleites.  Finally, the court dismisses CRL's claim that the parties advertise "in the **same exact** magazine – *Where Magazine*."  Pltf.'s Mot. at 12 (emphasis in original).  The evidence shows that CRL advertises in *Where - Las Vegas*; Defendants advertise in *Where - Seattle*.  The parties do not advertise in the **same exact** magazine; they advertise in magazines with mutually exclusive circulations.

That the parties both use the internet to promote their services weighs slightly in CRL's favor, at best.  Spa Club Seattle has a website, as does CRL.  Both parties pay internet search engines to link their ads to search results.  The "proper inquiries," however, in examining internet marketing are "whether both parties use the Web as a substantial marketing and advertising channel" and "whether the parties' marks are utilized in conjunction with Web-based products."  Entrepreneur Media, 279 F.3d at 1151 (internal citations and quotations omitted).  CRL makes too much of the probative value of the parties' presence on the internet.  In cases where the parties' products and services are internet-based, their simultaneous internet presence may weigh strongly in favor of a likelihood of confusion.  See, e.g., Brookfield Communs., Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1057 (9th Cir. 1999) (addressing likelihood of confusion between two internet-based movie industry databases); GoTo.com, 202 F.3d at 1207 (addressing competing internet search engines).  Here, where the parties' services are decidedly not internet-based, the likelihood of confusion is smaller.  Entrepreneur Media, 279 F.3d at 1151.  Although a person searching for a "spa club" on the internet might well find both CRL's and Defendants' services advertised, "[g]iven the broad use of the Internet today, the same could be said for countless companies."  Playboy Enters., Inc. v. Netscape Communications Corp., 354 F.3d 1020, 1028 (9th Cir. 2004).

ORDER – 9

### 3.   The Relatedness of the Parties' Goods or Services

As previously noted, CRL's SpaClub facilities offer far more extensive services than does Defendants' salon.  This mitigates in favor of Defendants.  Nonetheless, it is undisputed that Defendants, like CRL, offer massage treatments, beauty services, and cosmetic products.  CRL offers evidence that the price of services at its Florida SpaClub location is only somewhat higher than Defendants' price for comparable services. Neither party compares the Seattle salon's prices to other SpaClub locations.  Both parties sell cosmetic products, although CRL does so under its own brand name, whereas Defendants sell products under other companies' brands and labels with a "compliments of Spa Club Seattle" or similar notation affixed.  Finally, Defendants point out that their services are not likely to be considered related because their facility is in Seattle, far from any CRL facility.  The court notes that this evidence also weighs against Defendants, as their use of the Spa Club Seattle name could suggest that their facility is merely the Seattle branch of CRL's SpaClub enterprise.

The relative weakness of the SpaClub mark also weighs against CRL in considering the relatedness of the parties' services.  The court must apply a "sliding scale approach as to the weight that relatedness will carry dependent upon the strength of the trademark." Entrepreneur Media, 279 F.3d at 1148.  The sliding scale balances the trademark holder's rights against the "broad societal interest in preserving common, useful words for the public domain." Id.  CRL chose common words to comprise its SpaClub mark, and thus the likelihood that customers will confuse its facilities with others that use the same common words is diminished. Id. at 1147-48.  Overall, this Sleekcraft factor weighs slightly in CRL's favor, at best.

### 4.   The Strength of CRL's Mark

The relative weakness of the SpaClub mark dictates that this Sleekcraft factor weighs strongly in Defendants' favor.  As the court has already noted, the SpaClub mark

ORDER – 10

is at best a descriptive mark that has acquired secondary meaning.  The mark is not particularly strong, and thus this factor would mitigate in favor of a jury finding that there is no likelihood of confusion.

### 5.    Evidence of Actual Confusion

To demonstrate actual confusion in the marketplace, CRL engaged an expert to conduct a survey of potential consumers in a Seattle-area mall.  Randomly selected survey participants answered preliminary questions to determine if they were unbiased potential customers for the services that CRL's SpaClubs and Spa Club Seattle offer.  Surveyors showed screened participants a one-page excerpt from CRL's website and a one-page excerpt from Spa Club Seattle's website.  Participants then revealed if they believed that the two facilities were affiliated, or that one facility had endorsed the other, or that one facility would need the other's permission to use its name.  Surveyors asked participants questions to determine the basis of their beliefs.  The survey reveals that as many as 16.2% of customers believed that the facilities were affiliated, endorsed, or needed permission based solely on the similarities between the names of the facilities.

CRL's survey provides evidence of actual confusion.  Defendants take issue with portions of the survey's methodology, but they present no evidence contradicting CRL's expert's declaration that he conducted the survey according to generally accepted principles.  See Prudential Ins. Co. v. Gibraltar Financial Corp., 694 F.2d 1150, 1156 (9th Cir. 1982).  Even if Defendants have valid criticisms of CRL's survey, those criticisms only reduce the weight afforded the testimony.  Playboy Enters., 354 F.3d at 1027.  The survey shows, at a minimum, that there is a "genuine issue of material fact on the actual confusion issue."  Id.

The court notes, however, that the survey provides evidence only of a narrow strain of consumer confusion.  What confused 16.2% of survey participants was the two web pages that they were shown.  There is no evidence that the average consumer who

ORDER – 11

would encounter both CRL's marks and Defendants' marks would encounter the same web pages or similar promotional material.  The survey demonstrates confusion between two specific pieces of paper; it does not necessarily demonstrate actual confusion in the marketplace.  Indeed, notably absent from the record is evidence that any customer of either CRL's facilities or the Seattle Spa Club has confused the two businesses.  See, e.g., Americana Trading, 966 F.2d at 1289 (noting relevance of confusion among actual consumers).  Thus, while the court finds that CRL has established actual confusion, it gives limited weight to that finding.

### 6.    Likelihood of Expansion of the Parties' Product Lines

The court finds that there is insufficient evidence of the parties' intent to expand, and thus this factor slightly favors Defendants.  Spa Club Seattle has no plans to expand beyond the Seattle area.  The borders of the CRL empire are currently at least 800 miles from Seattle.  The only evidence of likely expansion is a vague statement that CRL has "actively pursued expansion in the Seattle area" and has met with developers to discuss possible sites.  There is no evidence beyond this statement that CRL will open a Seattle SpaClub.  So long as CRL's SpaClubs and Spa Club Seattle operate at a great distance from one another, consumers are less likely to confuse their products and services.

### 7.    The Degree of Care a Purchaser is Likely to Exercise

This factor does not weigh in either party's favor.  Regardless of the degree of care consumers of spa services exercise, the vast distance between the parties' facilities makes it exceedingly unlikely that anyone would choose one party's facility merely because it offers similar services.  The central question is whether consumers are likely to be confused about whether CRL is affiliated with Spa Club Seattle, or vice versa.  The parties introduce no competent evidence that would allow the court to determine if the degree of care that the average spa services consumer exercises is sufficient or insufficient to allow them to discern that the facilities are not affiliated.

ORDER – 12

1

**8.     The Defendants' Intent in Selecting the Mark**

2

This factor strongly favors Defendants.  There is no evidence that Defendants were

3

aware of CRL's trademarks when they selected the Spa Club Seattle name.

4

**9.     Summary of the <u>Sleekcraft</u> Analysis**

5

Having reviewed each <u>Sleekcraft</u> factor, the court is compelled to hold that neither

6

party is entitled to judgment as a matter of law on the likelihood of confusion issue.  At

7

best, the court could hazard a guess as to who would likely prevail on this issue at trial.

8

The court's role on summary judgment is not to guess.  Considering the evidence as a

9

whole, the court concludes that a reasonable jury could find in either party's favor on the

10

likelihood of confusion question.  Summary judgment is inappropriate.

11

**IV.  CONCLUSION**

12

For the foregoing reasons, the court DENIES CRL's summary judgment motion

13

(Dkt. # 53) and DENIES Defendants' summary judgment motion (Dkt. # 50).[7]

14

15

Dated this 9th day of May, 2005.

16

s/James L. Robart

17

_____

JAMES L. ROBART

United States District Judge

18

19

[7]In reviewing the parties' briefing, the court was disappointed to find Defendants'

20

counsel repeatedly invoking language approaching, and sometimes exceeding, the bounds of
professional conduct.  Counsel characterizes CRL's claims as "grossly unsupported factually and

21

legally" (Defs.' Opp'n at 1); chastises CRL's "false and erroneous misinterpretation[s]" of law
(Defs.' Opp'n at 3); accuses CRL of making "*eleventh hour* false allegation[s] . . . to prop up its

22

frivolous claim" (Defs.' Opp'n at 16); refers to this lawsuit as a "frivolous, foreign threat"
(Defs.' Mot. at 5); accuses CRL of a "feeble and incredulous attempt to manufacture evidence"

23

(Defs.' Mot. at 18); asserts that CRL's consumer survey used "suspect and corrupt

24

methodology" that "borders on absurdity" (Defs.' Mot. at 19); and claims that CRL
"misconstrues and falsely manipulates the holdings in all of its cited cases" (Defs.' Reply at 7).

25

The court strongly disapproves of this unnecessary, inflammatory language, and directs counsel
to adopt a more professional tone in future submissions to the court.  Counsel's missives do not

26

advance his clients' cause; indeed they threaten his clients' cause by distracting the court from

27

the merits of their defenses.  In the future, the court will not shy away from using its inherent

28

power to sanction counsel for such conduct.

ORDER – 13